UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DENNIS LOPEZ,            ) | |
|     Plaintiff,         ) | |
| ) | |
| v.                      ) | 2:10 CV 277 |
| ) | |
| VALLUVAN JEEVANANDAM, M.D. and   ) | |
| MELVIN R. FREMIT, P.A.,     ) | |
|     Defendants.       ) | |

### OPINION and ORDER

This matter is before the court on defendants'[1] motion to bar plaintiff's expert, David Jayakar, M.D., from testifying at trial or at any hearing, pursuant to FED. R. CIV. P. 16(f) and 37(c)(1). (DE # 22.) Defendants argue that plaintiff failed to provide Dr. Jayakar's written report as required by FED. R. CIV. P. 26(a)(2)(B) by the date set in the court's scheduling order, and that excluding Dr. Jayakar's testimony is an appropriate sanction for that failure. Defendants contend that exclusion of Dr. Jayakar's testimony is an "automatic" sanction under the text of the RULE:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1); *see Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

Plaintiff responds that no sanction is warranted here, because there was no violation: Dr. Jayakar is a treating physician, not one "retained or specially employed to

---

[1] The motion was filed by defendant Jeevanandam. Defendant Fremit's motion to join (DE # 28) is granted.

provide expert testimony in the case," FED. R. CIV. P. 26(a)(2)(B), therefore making the summary report that was provided appropriate under FED. R. CIV. P. 26(a)(2)(C). Plaintiff also argues that if there was a violation of the scheduling order, it is harmless where defendants have not even deposed Dr. Jayakar; moreover, exclusion of his testimony would almost certainly result in a judgment for defendants, and in that circumstance the sanction must be proportional to the harm, rather than automatic. *Musser v. Gentiva Health Services*, 356 F.3d 751, 756 (7th Cir. 2004).

In reply, defendants argue that Dr. Jayakar is expected to offer his opinions as to causation and standard of care,[2] which only would have been formed after his treatment of plaintiff and which opinions are "quintessential" and "classic" expert testimony. (DE # 25 at 1, 6). Defendants assert that Dr. Jayakar would have arrived at these opinions only in response to inquiries from plaintiff's attorney, not during the course of plaintiff's treatment, and that makes him an expert who must provide a full written report under FED. R. CIV. P. 26(a)(2)(B).

As relevant here, a full written report is required of an expert witness if "the witness is one retained or specially employed to provide expert testimony in the case." FED. R. CIV. P. 26(a)(2)(B), otherwise a summary report under subsection (a)(2)(C) suffices. The difference of opinion between the parties as to whether subpart (a)(2)(B) or (a)(2)(C)

---

[2] It is expected that Dr. Jayakar will offer opinions on these issues because they are necessary elements of plaintiff's case, and Dr. Jayakar is the only expert plaintiff has disclosed. Plaintiff essentially admits this is true by acknowledging that exclusion of his expert testimony will result in a summary judgment for defendants.

governs here begins with *Meyers v. National R.R. Passenger Corp.*, in which the Court of Appeals held that "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)." *Meyers*, 619 F.3d 729, 734-35 (7th Cir. 2010).

However, three months after the court decided *Meyers* amendments to RULE 26 took effect, adding new subpart (a)(2)(C) "to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions." FED. R. CIV. P. 26, adv. comm. nn. (2010 Amendments, Subdivision (a)(2)(C)). The Advisory Committee explained further:

> Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.
> *This amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement*. An (a)(2)(B) report is required only from an expert described in (a)(2)(B).
> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or *705. Frequent examples include physicians* or other health care professionals and employees of a party *who do not regularly provide expert testimony.*

*Id*. (Emphasis added.)

Plaintiff argues that because of this 2010 amendment, the decision in *Meyers* to "deem" certain treating physicians as experts required to provide a full written report no

longer applies to require a full written report in the present case. Plaintiff relies on *Coleman v. American Family Mut. Ins. Co.*, 274 F.R.D. 641, 643 (N.D. Ind. 2011), in which Magistrate Judge Rodovich, speaking for this court, held:

> Nothing in the record suggests that the treating physicians were sought for any purpose except treatment. Because the amendment to Rule 26 attempts to clarify the distinction between an expert retained to testify and one who will testify for reasons independent of trial preparation, the court finds that the amendment overcomes the holding in *Meyers* as far as the physicians at hand are concerned *because of the purpose for which they were first sought.* For this reason, the treating physicians are not required to submit a complete expert report.

*Id.* at 645. (Emphasis added.) Plaintiff argues that "Dr. Jayakar's opinion testimony is derived from facts and observations he learned while treating [plaintiff] Dennis Lopez for his failing heart and was not sought in anticipation of litigation," therefore under *Coleman* disclosure of a summary opinion was appropriate. (DE # 24 at 7.)

Defendants' reply is that this district has continued to follow *Meyers* even after the 2010 amendment to RULE 26, *see, e.g.*, *Aurand v. Norfolk Southern Ry. Co.*, 802 F. Supp.2d 950, 962-63 (N.D. Ind. 2011), and the current circumstances are entirely different from *Coleman*, making plaintiff's reliance thereon misplaced. Defendants argue that unlike *Coleman*, where the expert's opinion was on causation only, here plaintiff sought an opinion from Dr. Jayakar on the appropriate standard of care, which is

> quintessential expert testimony . . .. Dr. Jayakar had no reason or need to form a standard of care opinion in order to treat Lopez, and his opinion that Dr. Jeevanandum provided negligent care three months before Dr. Jayakar ever saw Lopez could not possibly be based on his own observations and treatment.

4

(DE # 25 at 1.) Defendants point out that despite the 2010 amendment adding the summary disclosure provision to RULE 26, this court has recognized that a plaintiff has a burden to show that a doctor's expert opinion was formed in the course of treatment in order for a written report under RULE 26(a)(2)(B) not to be required. *Aurand*, 802 F. Supp. 2d at 963. Defendants assert that not only has plaintiff not met that burden, it would be impossible for him to do so because:

> Dr. Jayakar, as a subsequent treating physician, could not possibly have formulated an opinion on the care that Dr. Jeevanandum provided three months earlier based on his personal observations. In fact, Lopez tells us that Dr. Jayakar formed his opinions, in part, based on his review of records from Illiana Surgery and Medical Center, which pertain to Dr. Jeevanandum's care. This assertion begs the questions of who provided Dr. Jayakar with Dr. Jeevanandum's records and why? The only plausible answer is that Lopez provided them to Dr. Jayakar in order for him to express opinions on the standard of care for purposes of this litigation.

(DE # 25 at 6.) Finally, defendants point out that plaintiff himself claims that Dr. Jayakar's oral opinion on negligence is work product, which can only mean a written expert report was required. *See* FED. R. CIV. P. 26(b)(4)(C) (protecting "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)").

Defendant's first two closely-related arguments are that Dr. Jayakar's opinion on the standard of care (and, to a lesser extent, causation) are "quintessential" expert testimony, and that he could not possibly have arrived at them based solely on his treatment and care of plaintiff. The court is not convinced that either of these arguments show that a full written expert report was required. First, even if causation and/or standard-of-care testimony is classic expert opinion, that proves nothing, because RULE

26(a)(2)(C) recognizes that expert testimony can be provided by experts who are not required to make a full written report under RULE 26(a)(2)(B).

Second, although the undersigned judge is not a medical expert, it does not seem self-evident that an opinion on either causation or standard of care cannot possibly be formed by a treating physician during the course of a patient's care. Doctors can, and do, review patients' medical histories and records when treating them for the purposes of both diagnoses and deciding on a course of treatment. The court also has no reason to think it is impossible that a surgeon performing a procedure could not be able to observe that a prior surgical procedure was inappropriate or botched,[3] and form an opinion from that observation.

It appears possible that Dr. Jayakar may have formed such an opinion here. As one of the exhibits to their reply memorandum, defendants have attached a letter from plaintiff's counsel making supplemental disclosures in which counsel states that plaintiff testified in his deposition that "he was told by Dr. Jayakar that the July 2005 surgery had not been done correctly." (DE # 25-1.) Also suggesting that this is the case, the summary disclosure that was provided for Dr. Jayakar states that he is expected to testify that at the time he performed surgery he saw that all five bypass grafts from the prior surgery had closed, that "arterial bypass grafting and separate bypass grafts should have been utilized in a man" plaintiff's age, and that the subsequent hospitalizations and surgical procedures

---

[3] The court does not mean to imply anything regarding defendants' medical care of plaintiff. This is simply a hypothetical.

"were a result of the technique and grafts utilized in the July 2005 surgery by the defendants." (DE # 22-1 at 3.)

  This is in contrast to the situation in *Aurand*, where the treating physician had already been deposed and his deposition testimony allowed the court to conclude with confidence that his expert opinion had not been reached during the course of his treatment of plaintiff. 802 F. Supp. 2d at 963. Here, defendants essentially rely only on a presumption that opinions about causation and standard of care can never be formed during a course of treatment, but they have not shown the court that any such presumption exists. Given this difference from *Aurand*, two things are apparent. First, defendants have not definitely established a violation of RULE 26(a)(2). Second, even if plaintiff did violate the RULE, the violation was substantially justified by this court's decisions in *Coleman* and *Aurand* not being completely harmonious, and it is difficult to see that defendants have been prejudicially harmed where discovery is ongoing, dispositive motions are yet to be filed and a the trial has not been scheduled.

  Finally, defendants' third argument is that plaintiff's attorney, by claiming that communications with Dr. Jayakar are protected as work product, acknowledges that a full written report was required because RULE 26(b)(4)(C) only protects communications with an expert from whom a written report is required under RULE 26(a)(2)(B). While this accurately summarizes the text of subsection (b)(4)(C), the committee notes state that the "rule does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine." FED. R. CIV. P. 26, adv. comm. nn. (2010

Amendments, Subdivision(b)(4)). Thus, plaintiff's counsel's claim of privilege is not necessarily an admission that a report under subsection (a)(2)(B) was required.

To sum up, the court does not believe that defendants have demonstrated that plaintiff violated RULE 26(a)(2)(B), or, if plaintiff did, that defendants have been caused such prejudice that excluding Dr. Jayakar's testimony would be an appropriate sanction. Therefore, defendant's motion (DE # 22) will be denied.

In their reply memorandum defendants argued that plaintiff's summary disclosure did not even comply with RULE 26(a)(2)(C). Because this argument was made for the first time in that reply, plaintiff did not have the opportunity to address it. This is a matter which can be further addressed by the Magistrate Judge. Because discovery in this case is ongoing, the Magistrate Judge can consider whether a supplemental and more detailed report should be required of Dr. Jayakar, and whether additional measures are warranted, such as allowing defendants to make additional expert disclosures after deposing Dr. Jayakar.

For the reasons above, defendant Fremit's motion for joinder (DE # 28) is **GRANTED**; and defendants' motion to bar plaintiff's expert (DE # 22) is **DENIED**.

                                           **SO ORDERED.**

Date: March 12, 2013

                                          s/James T. Moody
                                          JUDGE JAMES T. MOODY
                                          UNITED STATES DISTRICT COURT